Dena C. Sharp (SBN 245869)
dsharp@girardsharp.com
Adam E. Polk (SBN 273000)
apolk@girardsharp.com
Simon S. Grille (SBN 294914)
sgrille@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Gary M. Klinger (*pro hac vice* forthcoming)
gklinger@milberg.com
Alexandra M. Honeycutt (*pro hac vice* forthcoming)
ahoneycutt@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ELI SILVA AND ASHLEY GARDINER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL HOLDINGS, INC., a California Corporation, PAYPAL, INC., a California Corporation,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, on their own behalf and on behalf of all others similarly situated, allege as follows:

## I.    INTRODUCTION

1.    Honey is a widely used browser extension that is offered to online shoppers for free. Honey purports to comb the internet for coupons that can be applied to online purchases or confirm that the price the consumer sees is the best price available.

2.    Honey's purported ability to quickly price check before purchase makes the browser extension appealing to consumers looking for a discount on a product they're already interested in

purchasing and have already added to their online shopping cart.

3.    On January 6, 2020, PayPal Holdings Inc. announced that it acquired Honey Science Corporation for $4 billion—PayPal's largest acquisition to date. PayPal took full control of operations shortly thereafter and rebranded the browser extension as "PayPal Honey" in 2022.

4.    According to PayPal, there are at least 17 million individuals in the United States who use the Honey extension each day.

5.    Online marketers, such as YouTubers and online influencers, direct their followers and viewers to specific products and services and earn sales commissions when their followers and viewers purchase the products and services they are promoting.

6.    Online retailers (or "eCommerce merchants") work with these online marketers through affiliate marketing programs, which rely on tracking tags and affiliate marketing cookies to determine who gets credit for online referrals and product sales.

7.    The online marketer is given a specific web link to share with their followers and audience, and if someone clicks on that link immediately prior to making a purchase, the online marketer's unique affiliate marketing cookie populates and credits the online marketer with the sale. The industry refers to this practice as "last click attribution."

8.    According to recent reports, however, Honey is cheating online marketers out of commissions they are entitled to during the checkout process.

9.    As described in more detail throughout this complaint, PayPal programmed the Honey browser extension to systematically appropriate commissions that belong to online marketers like Plaintiffs and Class members. It does so by substituting its own affiliate marketing cookie in place of the online marketer's affiliate marketing cookie, and this happens even though the customer used the online marketer's specific affiliate web link to navigate to the purchase page.

10.   Plaintiffs are online marketer's whose commission payments Honey has wrongfully misappropriated. Plaintiffs bring this case on their own behalf and on behalf of all others similarly situated to recover the damages they have sustained and enjoin Honey's wrongful conduct going forward.

CLASS ACTION COMPLAINT

## II.    JURISDICTION

11.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from PayPal, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

12.    This Court has personal jurisdiction over PayPal because PayPal has its principal headquarters in San Jose, California, does business in California, directly or through agents, and has sufficient minimum contacts with California such that it has intentionally availed itself of the laws of the United States and California.

## III.    VENUE AND DIVISIONAL ASSIGNMENT

13.    Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), and intra-district assignment to the San Jose division of the Court is proper under Local Rule 3-2(d), because a substantial number of the events or omissions giving rise to the claims arose in Santa Clara County, where PayPal is headquartered and conducts business.

## IV.    PARTIES

A.    **Plaintiffs**

14.    Eli Silva is a resident of Dublin, California.

15.    Ashley Gardiner is a resident of Ridgecrest, California.

B.    **Defendants**

16.    PayPal Holdings, Inc. is a corporation organized and existing under the laws of Delaware. It holds all assets and liabilities of PayPal, Inc., a subsidiary corporation organized and existing under the laws of Delaware. PayPal Holdings, Inc. and PayPal, Inc. are collectively referred to in this Complaint as "PayPal." PayPal transacts business and is headquartered within this judicial district, specifically at 2211 North First Street, San Jose, California 95131.

17.    In addition to operating its own platform, PayPal owns and operates Honey Science Corporation, which originally developed the Honey browser extension. The term "PayPal" in this complaint, unless otherwise noted, encompasses Honey.

## V.    RELEVANT FACTS

### A.    Background

#### 1.    The Honey Browser Extension

18.    PayPal entices users to download the Honey browser extension by promising to search the internet for coupons that can be applied to items that are already in the user's online shopping cart.

19.    The Honey browser extension works via near-instantaneous web scraping to search for and test coupon codes that may be applicable to the relevant purchase.

#### 2.    Online Marketers and the Commission System

20.    With the rise of social media and increasing popularity of platforms like YouTube, several retailers have turned to online marketers (including but not limited to YouTubers, influencers, bloggers, and reviewers) to market their products to consumers.

21.    Online marketers make commissions by directing their followers to affiliate links.

22.    Affiliate links are web-based hyperlinks that direct consumers to a website where they can purchase the product or service being promoted by an online marketer.

23.    eCommerce merchants use tracking tags to determine whether a consumer landed on the webpage for their product or service and made a purchase after clicking an affiliate link. These retailers can then attribute the sale to the online marketer responsible for the affiliate link and provide a commission.

#### 3.    Honey's Misappropriation of Online Marketer Commissions

24.    Unbeknownst to Plaintiffs and other online marketers, PayPal has been using the Honey browser extension to manipulate the user's network transmissions to allow PayPal to surreptitiously take credit for sales commissions it did not earn.

25.    Honey displaces tracking tags that point to online marketers as the source of the referral, substitutes its own tracking tags, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from the online marketer's affiliate marketing link.

CLASS ACTION COMPLAINT

26.    Analysis of network traffic on websites where the Honey extension was running reveals electronic transmissions and communications between a user's browser, the website, and other third parties. Network traffic is typically invisible to ordinary website users.

27.    The network traffic demonstrates that, when an online shopper has downloaded the Honey browser extension, it silently and invisibly removes affiliate cookies and tracking tags that would otherwise credit the rightful salesperson—the online marketer—with the sale of that particular product or service.

28.    For example, one investigation demonstrated what happens when an online shopper watches a YouTube video and wants to purchase something that a specific online marketer is promoting.

29.    The user in question scrolls down to the video description, identifies the link to the specific product they want to purchase, and clicks on the link. At this point, they are redirected to the merchant website to complete the purchase.

30.    If the user decides to complete the purchase, whether the online marketer will be credited with the referral and receive a commission depends upon whether the online shopper in question has activated the Honey browser extension.

31.    The image below is a screenshot of the network traffic prior to activating the Honey browser extension. The extensions tab shows that Honey has been installed but has not yet been activated on the particular page. At this point, the _entry cookie (an affiliate marketing cookie) correctly attributes the referral to "Linus Tech Tips." In this scenario, the online marketer gets credit for the referral and may receive a commission.

CLASS ACTION COMPLAINT

**Pre-Activation of Honey Extension**



32.    However, as demonstrated in the image below, once the Honey extension is activated, the _entry cookie—which would otherwise credit "Linus Tech Tips" with the sale and affiliate commission—is overwritten and displaced. In this scenario, PayPal gets credit for the referral and ultimate purchase of the product even though it did not help the online shopper identify the product, nor did it provide the online shopper with any additional discount for the product.

**Post-Activation of Honey Extension**



CLASS ACTION COMPLAINT

**B.    Honey's Exploitation of Last-Click Attribution and Affiliate Marketing Links.**

33.    When an online shopper clicks on an online marketers' affiliate link, a tracking tag is generated, which becomes part of the URL and allows the eCommerce merchant to know who to credit with the referral and commission for the sale.

34.    The tracking tag is saved on the online shopper's browser in the form of a cookie.

35.    When it comes to online referral commissions from affiliate marketing links, the industry standard used for crediting sales is "last click attribution," which means the last click determines who gets credit for a sale.

36.    Consider a customer that clicks on a blogger's affiliate link to a particular product but never purchases the product. A few weeks pass, and the customer sees a different content creator's video on YouTube promoting the same product. The customer clicks on the YouTuber's affiliate link for the product and completes their checkout.

37.    In this scenario, last click attribution gives the YouTuber credit for the sale, not the blogger. This happens because, when the customer clicks on the YouTuber's affiliate link and opens the new checkout tab, the YouTuber's affiliate cookie displaces the blogger's affiliate cookie.

38.    The Honey browser extension is purposely designed to exploit the last-click attribution process, and it achieves this by producing pop-ups that simulate referral clicks.

39.    For example, if the online shopper clicks the "Apply Discounts" button shown below during the checkout, the Honey browser extension will discretely open a new tab that acts as a simulated referral click. This process removes the content creator's affiliate cookie and replaces it with PayPal's own affiliate cookie.

CLASS ACTION COMPLAINT



40.    Honey thus steals credit for sales and pockets commission money it did not earn. Accordingly, PayPal's goal is to entice online shoppers to activate the Honey Extension, and it aims to achieve this goal even when Honey has not identified any relevant coupons based on the products in the online shopper's cart.

**C.    Activation of the Honey Extension**

41.    As described below, PayPal entices online shoppers to activate the Honey browser extension in several different ways, each of which displaces the rightful referrer and claims commission credit for sales PayPal did not influence, much less generate.

42.    **Scenario 1:** An online shopper clicks a content creator's marketing affiliate link and adds a product or service to their shopping cart. As the customer proceeds through the checkout process, the Honey browser extension creates a pop-up box alerting the user that it has identified a coupon, thereby enticing the user to click the "Apply Coupons" button shown in the image below. Upon clicking the "Apply Coupons" button, Honey claims credit for the sale by removing the online marketer's affiliate cookies, and seamlessly and invisibly inserting its own affiliate cookies.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9



10    43.    **Scenario 2:** The same online shopper described in Scenario 1 is completing their

11   checkout, but Honey has not identified any coupons that apply to their purchase. Honey still

12   generates a pop-up to entice the user to click on one of Honey's buttons, but this time Honey simply

13   alerts the user that there are no coupons to apply to the shopping cart. Honey uses several different

14   types of pop-ups, some of which state: "We searched for you but didn't find any deals," or "You

15   already have the best price."

16    44.    This entices the user to click on buttons that say "Got It" or "Continue to Checkout"—

17   depending on which pop-up has populated—in order to clear the screen and complete their purchase.

18   Alternatively, the user may be presented with a button that allows them to try more coupon codes,

19   as shown below.

20

21

22

23

24

25

26

27

28

You already have the best price

We didn't find any active savings on
your order. That means you already
have the lowest price.

Continue to Checkout

Try more coupons?
We found 4 coupons that are unlikely to
work. If you'd like to try them anyway,
click the orange button.

Try 4 more coupons

Takes about 21 seconds

Report a problem

45.      Once again, if the user clicks any of these buttons, it will create a simulated referral click that removes the online marketer's affiliate cookies and invisibly credits PayPal with the referral and ultimate commission on the sale.

46.      **Scenario 3:** Honey Gold is an additional program that PayPal uses to siphon commissions. Honey Gold offers reward points to Honey users, which can be redeemed for gift cards to stores like Target. Under this pseudo cash back program, the Honey browser extension presents the user with the same type of pop-ups in Scenario 1 and Scenario 2, but it also includes language stating the user will earn Honey Gold points for their purchase regardless of whether there is or isn't a viable coupon code. Once again, when the user clicks on Honey's pop-up, it triggers a process that wrongfully attributes the sales commission to PayPal. In one example, Honey awarded the online shopper with 89 Honey Gold Points—equal to a mere .89 cents—while simultaneously depriving the rightful referrer and content creator of a $35.60 commission payment they would have received if the Honey browser extension was not activated.

47.      **Scenario 4:** Honey has nothing to offer the online shopper—no discounts and no Honey Gold points—but the browser extension displays a pop-up stating that the user can "Get Rewarded with PayPal." This entices the user to click PayPal's own "checkout" button as opposed to the checkout button that already appears on the online merchant's website.

CLASS ACTION COMPLAINT



48.    If the user clicks the PayPal checkout button in the Honey browser extension instead of the merchant's own checkout button, Honey steals credit for the referral and corresponding sales commission.

49.    In each of these scenarios, PayPal uses the Honey browser extension to wrongfully steal commissions from their rightful owners.

50.    Ironically, PayPal's business model involves recruiting unsuspecting content creators and influencers to promote the Honey browser extension to their audiences, thereby allowing it to divert commission payments from affiliate marketing links those same content creators and influencers rely on to earn money.

**D.    Plaintiffs' Experiences**

51.    **Eli Silva** is an influencer and content creator who earns commission payments from affiliate marketing links he shares on his website (https://www.deepdiscounts.club/), YouTube channel (@deepdiscounts), and social media pages (@deepdiscounts and the "deep discount club").

52.    In the past year, Mr. Silva has received approximately $30,000 in commission payments from products purchased via his affiliate marketing links.

53.    Mr. Silva would have earned more income in the form of commission payments but for PayPal's scheme to usurp commissions through the Honey browser extension.

54.   PayPal, via the Honey browser extension, stole credit for sales and conversions that Mr. Silva originated via his own platforms, emanating from the affiliate marketing links he shared on those platforms.

55.   **Ashley Gardiner** is a content creator that earns commission payments from affiliate marketing links she shares on her social media channel (@onceuponaminivan).

56.   Ms. Gardiner has received commission payments from products purchased via her affiliate marketing links.

57.   Ms. Gardiner would have earned more income in the form of commission payments from her affiliate marketing links but for PayPal's scheme to usurp commissions through the Honey browser extension.

58.   PayPal, via the Honey browser extension, stole credit for sales and conversions that Ms. Gardiner originated via her own platforms, emanating from the affiliate marketing links she shared on those platforms.

**E.   Damages & Harm**

59.   Plaintiffs and Class Members were harmed by PayPal's conduct because the Honey browser extension systematically steals commission payments from their rightful owners—i.e. the individual who promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

60.   Plaintiff Silva promotes products via his social media channels and hosts affiliate marketing links to those products. He has several marketing affiliate links with Walmart.com, and his referral tag is an affiliate cookie whose value is "wmlspartner:369978." This is set as an "AID" cookie (an affiliate marketing cookie), which corresponds to a specific referral program and specific referrer.

61.   When one of Mr. Silva's followers clicks on his affiliate marketing link and adds the product to their online shopping cart, his AID cookie attaches and attributes the referral and sale of the product to Mr. Silva, thereby crediting him with the sale and corresponding commission payment.

62.   However, if the user activates the Honey browser extension during the checkout, Honey wrongfully removes Mr. Silva's AID cookie (wmlspartner=imp_369978) and replaces it with

1  Honey/PayPal's own AID cookies (wmlspartner=imp_118767), stealing credit for the referral and
2  corresponding commission payment for that particular product.

3        63.    Mr. Silva spends a substantial amount of time and money cultivating his follower-base
4  and promoting the products featured in his affiliate marketing links.

5        64.    He relies on the stream of income he generates through his work as a content creator.

6        65.    Ms. Gardiner also promotes products via her social media channels and hosts affiliate
7  marketing links to those products. She is part of the Benable affiliate marketing platform, and her
8  affiliate links include links to the Nintendo Switch and Sony Alpha ZVE10 II camera kit.

9        66.    When one of Ms. Gardiner's followers clicks on her affiliate marketing link to
10  purchase the Nintendo Switch, they are redirected to bestbuy.com, and her unique referral tag is
11  generated so that she will be credited with the ultimate sale of the product and any corresponding
12  commission payment owed to her.

13       67.    However, if the user activates the Honey browser extension during the checkout,
14  Honey removes Ms. Gardiner's referral tag and replaces it with its own referral tag, thereby stealing
15  credit for the referral and sale of the Nintendo Switch and any corresponding commission payment
16  for that particular sale.

17                                        *       *       *

18       68.    Plaintiffs were harmed by PayPal, via the Honey browser extension, which deprived
19  them of referral fees and sales commissions they are rightfully entitled to as the generator of those
20  referrals and sales.

21       69.    The Honey browser extension is activated during millions of online purchases each
22  year. In the absence of the Honey browser extension, Plaintiffs and Class Members would have
23  earned more money in the form of referral fees and sales commissions from their respective affiliate
24  marketing links.

25       70.    Plaintiffs continue to devote time and energy to content creation to generate
26  commissions.  Plaintiffs accordingly face future harm in the form of stolen referral fees and sales
27  commissions because PayPal's Honey browser extension continues to steal affiliate marketing
28  commissions with each passing day.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.    CLASS ALLEGATIONS

71.    Plaintiffs, on behalf of themselves and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seek damages and injunctive relief on behalf of the members of the following Class and constituent Subclass (collectively, the "Class"):

a.    **Nationwide Class:** All persons in the United States who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to Paypal as a result of the Honey browser extension.

b.    **California Subclass:** All persons in California who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to Paypal as a result of the Honey browser extension.

72.    Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

73.    **Numerosity:** Members of the Class are so numerous that joinder is impracticable. There are at least tens of thousands of members of the Class, geographically dispersed throughout the United States, such that joinder of all Class members is impracticable. There are at least thousands of members of the Subclass, such that joinder of all Subclass members is likewise impracticable.

74.    **Typicality:** Plaintiffs' claims are typical of the claims of the other Class members. The factual and legal bases of PayPal's liability are the same and resulted in injury to Plaintiffs and all other members of the Class.

75.    **Adequate representation:** Plaintiffs will represent and protect the interests of the Class both fairly and adequately. They have retained counsel competent and experienced in complex class-action litigation. Plaintiffs have no interests that are antagonistic to those of the Class, and their interests do not conflict with the interests of the Class members they seek to represent.

76.    **Commonality and Predominance:** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members

because PayPal has acted on grounds generally applicable to the Class and because Class members share a common injury. Common facts and legal questions apply to the claims of Plaintiffs and Class members because the injuries incurred by Plaintiffs and each member of the Class arose from the same conduct alleged herein.

77.    There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

    a.    Whether PayPal programmed and designed the Honey browser extension in a manner that wrongfully credits PayPal as the originator of sales referrals;

    b.    Whether the scheme described herein results in PayPal being awarded commission payments it did not rightfully earn;

    c.    Whether PayPal was unjustly enriched to the detriment of Plaintiffs in the form of commission payments;

    d.    Whether PayPal, through the actions alleged in this complaint, violated consumer protection laws in the state of California;

    e.    Whether consumers and Class members have been damaged by PayPal's conduct; and

    f.    The nature and scope of appropriate injunctive relief.

78.    **Superiority:** Class proceedings on these facts are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be ensured.

79.    Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- 15 -
CLASS ACTION COMPLAINT

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for PayPal;

- The prosecution of separate actions by individual Class Members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

- PayPal has acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

- The claims of Class Members are comprised of common issues whose resolution in a class trial would materially advance this litigation.

## VII.   TOLLING OF THE STATUTES OF LIMITATIONS

80.     All applicable statute(s) of limitations have been tolled by PayPal's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and Class Members could not have reasonably discovered PayPal's practice of surreptitiously manipulating network transmissions to allow Honey to take credit for sales commissions it did not earn.

81.     PayPal was and remains under a continuing duty to disclose to Plaintiffs and Class Members its practice of displacing tracking tags that point to online marketers as the source of a referral and substituting its own tracking tags to appropriate commissions that belong to online marketers like Plaintiffs and Class members. As a result of the active concealment by PayPal, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIII.  CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### UNJUST ENRICHMENT
### (ON BEHALF OF THE CLASS)

82.     Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

83.     Plaintiffs lack an adequate remedy at law.

84.     Plaintiffs and Class members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived.  These payments were rightfully earned by Plaintiffs and Class members, not PayPal.

85.     PayPal benefitted from the referral fees and commission payments that were credited to it as a function of the Honey browser extension wrongfully claiming credit for commissions via last-click attribution.

86.     PayPal understood that it so benefitted, and it also understood and appreciated that the Honey browser extension would cause the harm described herein.

87.     But for PayPal's unjust and improper use of the Honey browser extension, it would not have been credited and awarded commission on sales that emanated from Plaintiffs' and Class Members' respective affiliate marketing links.

88.     As a result of PayPal's wrongful conduct as alleged in this Complaint, PayPal has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class members.

89.     PayPal continues to benefit and profit from the Honey browser extension while Plaintiffs and Class members continue to have their rightful commission payments diverted to PayPal.

90.     PayPal's unjust enrichment is traceable to, and resulted directly and proximately from the conduct alleged herein, including by using the Honey browser extension to wrongfully credit itself with referrals and commissions it did not rightfully earn.

91.     The benefit conferred upon, received, and enjoyed by PayPal was not conferred officiously or gratuitously, and it would be inequitable and unjust for PayPal to retain the benefit.

92.     Equity and good conscience militate against permitting PayPal to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiffs and Class members.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ.* (ON BEHALF OF THE CALIFORNIA SUBCLASS)

93.     Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

1    94.    Plaintiffs lack an adequate remedy at law.

2    95.    California's Unfair Competition Law (UCL) defines "unfair competition" to include

3    any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code §§ 17200 *et*

4    *seq.*

5    96.    PayPal has engaged in acts and practices that are unlawful and unfair in violation of

6    the UCL.

7    97.    PayPal is a "person" as defined by Cal. Bus. & Prof. Code §17201.

8    98.    PayPal's business acts and practices are unlawful because they interfere with the

9    prospective economic advantage of online marketers and constitute conversion, as set forth below.

10   They also have unjustly enriched PayPal for the reasons stated above.

11   99.    PayPal committed unfair business practices by using the Honey browser extension to

12   steal credit for sales referrals and thereby receive commission payments that rightfully belong to

13   Plaintiffs and Subclass members.

14   100.    PayPal's conduct is unfair in violation of the UCL because it violates California's

15   public policy against interfering with another's prospective economic advantage.

16   101.    PayPal wrongfully deprives Plaintiffs and Subclass members of monies they rightfully

17   earned as the true originators of sales arising from their affiliate marketing links.

18   102.    The gravity of harm resulting from PayPal's practice of appropriating commissions

19   that belong to online marketers like Plaintiffs and Subclass members outweighs any potential utility

20   therefrom. PayPal's conduct set forth in this Complaint violates public policy and is unscrupulous,

21   offensive, and substantially injurious.

22   103.    PayPal actually and proximately caused harm to Plaintiffs and Subclass members in

23   that, among other things, they suffered economic injury by being deprived of commissions they

24   should have earned from referrals through their affiliate links.

25   104.    The conduct alleged herein is continuing and there is no indication that PayPal

26   will cease such activity in the future.

27   105.    PayPal's conduct in violation of the UCL has caused Plaintiffs and Subclass members

28   to be deprived of referral fees and commission payments for sales they rightfully originated.

CLASS ACTION COMPLAINT

Plaintiffs and the members of the California Subclass thus suffered lost money or property as a result of PayPal's conduct.

106.    Plaintiffs therefore seek restitution, an injunction, and all other appropriate relief in equity, including reasonable attorneys' fees and costs of suit.

## THIRD CAUSE OF ACTION

### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (ON BEHALF OF THE CLASS)

107.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

108.    Plaintiffs and Class members are engaged in an economic relationship with eCommerce merchants by referring their followers to those merchants through affiliate links. In return, eCommerce merchants provide Plaintiffs and Class members with referral fees or commissions. This economic relationship is ongoing, and Plaintiffs and Class members expect to continue earning commissions in exchange for referrals.

109.    PayPal is aware of the referral and commission relationship between Plaintiffs and Class members on the one hand and eCommerce merchants on the other hand.

110.    Through use of the Honey browser extension, PayPal diverts commission payments from Plaintiffs and Class members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. PayPal, via the Honey browser extension, displaces tracking tags that point to online marketers as the source of the referral, substitutes its own tracking tags, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link.

111.    PayPal either intended to usurp commissions from Plaintiffs and Class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees from Plaintiffs and Class members.

112.    Plaintiffs and Class Members were harmed by PayPal's conduct because the Honey browser extension deprives Plaintiffs and Class Members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

CLASS ACTION COMPLAINT

113.    As a direct and proximate result of PayPal's conduct described in this Complaint, Plaintiffs and Class members suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

114.    As a result of the above conduct, PayPal is liable to Plaintiffs and Class members for damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### CONVERSION
### (ON BEHALF OF THE CLASS)

115.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

116.    Plaintiffs and Class Members possessed or had a right to possess commissions they earned from referring consumers to products and services sold by eCommerce merchants. The amount of each commission constituted a specific and identifiable sum.

117.    PayPal intentionally and substantially interfered with Plaintiffs' and Class members' personal property by usurping commissions and referral fees owed to Plaintiffs and Class members.

118.    PayPal, without proper authorization, assumed and exercised the right of ownership over these commissions, in hostility to the rights of Plaintiffs and Class members, without justification.

119.    PayPal's wrongful exercise of control over Plaintiffs' and Class members' personal property constitutes conversion.

120.    Plaintiffs and Class members neither assented to nor ratified PayPal's interference with their commissions.

121.    As a direct and proximate result of PayPal's conversion, Plaintiffs and Class members were harmed.

122.    PayPal is liable to Plaintiffs' and Class members for damages and costs permitted by law.

## PRAYER FOR RELIEF

A.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court:

CLASS ACTION COMPLAINT

B.     Certify this case as a class action, and appoint Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel;

C.     Enter judgment in favor of Plaintiffs and the Class;

D.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices to prevent the Honey browser extension from taking credit for sales it did not originate;

E.     Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiffs and Class members are entitled;

F.     Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

G.     Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

H.     Enter such other orders as may be necessary to restore to Plaintiffs and Class members any money and property acquired by PayPal through its wrongful conduct;

I.     Award Plaintiffs and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

J.     Award such other and further relief as the Court deems necessary and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Dated: December 30, 2024             Respectfully submitted,

                       By: */s/ Simon S. Grille*
                       Dena C. Sharp (SBN 245869)
                       Adam E. Polk (SBN 273000)
                       Simon S. Grille (SBN 294914)
                       **GIRARD SHARP LLP**
                       601 California Street, Suite 1400
                       San Francisco, CA 94108
                       Telephone: (415) 981-4800
                       dsharp@girardsharp.com
                       apolk@girardsharp.com
                       sgrille@girardsharp.com

CLASS ACTION COMPLAINT

Gary M. Klinger (*pro hac vice* forthcoming)
Alexandra M. Honeycutt (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
ahoneycutt@milberg.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT